# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **DARYL WALLACE,** | : | Case No. 3: 17-cv-00183 |
| | : | |
| **Plaintiffs,** | : | **JUDGE THOMAS M. ROSE** |
| | : | |
| **vs.** | : | |
| | : | **ANSWER, ANSWER TO** |
| **MONTGOMERY COUNTY, OHIO, et** | : | **CROSSCLAIM AND CROSSCLAIM** |
| **al.** | : | **OF DEFENDANT JERRID** |
| | : | **CAMPBELL** |
| **Defendants.** | : | |
| | : | **JURY DEMAND ENDORSED** |
| | | **HEREON** |

---

Now comes Defendant, Jerrid Campbell, and for his Answer to the Complaint of

Plaintiff, Daryl Wallace, does state the following:

1. Defendant denies the averments in Paragraph 1 of Plaintiff's Complaint.

2. Defendant admits that this Court has jurisdiction and that this forum is a proper venue.

   Defendant denies that Plaintiff's Complaint states a federal civil rights claim. Defendant

   denies any other averments in Paragraph 2 of Plaintiff's Complaint.

3. Defendant admits the averments in Paragraph 3 of Plaintiff's Complaint.

4. Defendant admits the averments in Paragraph 4 of Plaintiff's Complaint.

5. Defendant admits the averments in Paragraph 5 of Plaintiff's Complaint.

6. Defendant admits that he was a Montgomery County Sheriff's Corrections Officer

   employed by Montgomery County. Defendant admits that he is a person and, at all

relevant times, acted within the course and scope of his employment as a corrections officer under color of, and within, the law. Defendant denies that Plaintiff's Complaint states a federal civil rights claim. Defendant denies any other averments in Paragraph 6 of Plaintiff's Complaint.

7. Defendant lacks knowledge as to the averments in Paragraph 7 of Plaintiff's Complaint and, for that reason, denies.

8. Defendant admits the averments in Paragraph 8 of Plaintiff's Complaint.

9. Defendant lacks knowledge as to the averments in Paragraph 9 of Plaintiff's Complaint and, for that reason, denies.

10. Defendant denies the averments in Paragraph 10 of Plaintiff's Complaint.

11. Defendant admits that Plaintiff cursed at and insulted Defendant. Defendant denies the remaining averments in Paragraph 11 of Plaintiff's Complaint.

12. Defendant denies the averments in Paragraph 12 of Plaintiff's Complaint.

13. Defendant denies the averments in Paragraph 13 of Plaintiff's Complaint.

14. Defendant denies the averments in Paragraph 14 of Plaintiff's Complaint.

15. Defendant denies the averments in Paragraph 15 of Plaintiff's Complaint.

16. Defendant admits additional corrections officers responded to the pod and Mr. Wallace was handcuffed. Defendant denies the remaining averments in Paragraph 16 of Plaintiff's Complaint.

17. Defendant admits that there is video of the incident involving Defendant and Plaintiff attached video as Exhibit A. Defendant denies the remaining averments in Paragraph 17 of Plaintiff's Complaint.

18. Defendant denies the averments in Paragraph 18 of Plaintiff's Complaint.

19. Defendant lacks knowledge as to the averments in Paragraph 19 of Plaintiff's Complaint and, for that reason, denies.

20. Defendant denies the averments in Paragraph 20 of Plaintiff's Complaint.

21. Defendant denies the averments in Paragraph 21 of Plaintiff's Complaint.

22. Defendant denies the averments in Paragraph 22 of Plaintiff's Complaint.

23. Defendant denies the averments in Paragraph 23 of Plaintiff's Complaint.

24. Defendant denies the averments in Paragraph 24 of Plaintiff's Complaint.

25. Defendant denies the averments in Paragraph 25 of Plaintiff's Complaint.

26. Defendant admits the averments in Paragraph 26, but denies that excessive force was used on Plaintiff.

27. Defendant denies the averments in Paragraph 27 of Plaintiff's Complaint.

28. Defendant denies the averments in Paragraph 28 of Plaintiff's Complaint.

29. Defendant denies the averments in Paragraph 29 of Plaintiff's Complaint.

30. Defendant denies the averments in Paragraph 30 of Plaintiff's Complaint.

31. Defendant admits the averments in Paragraph 31, but denies that excessive force was used on Plaintiff.

32. Defendant denies the averments in Paragraph 30 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

33. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

34. Plaintiff's claim is barred because Defendant Campbell is qualifiedly immune under federal law.

## THIRD AFFIRMATIVE DEFENSE

35. Plaintiff's claim is barred because Defendant Campbell is immune under Ohio Revised Code Chapter 2744.

## FOURTH AFFIRMATIVE DEFENSE

36. All or part of Plaintiff's claim is barred because of the applicable statute of limitations.

## FOURTH AFFIRMATIVE DEFENSE

37. Plaintiff's claims are barred because Defendant acted reasonably in self-defense.

## FIFTH AFFIRMATIVE DEFENSE

38. Plaintiff's claims are barred because Defendant acted reasonably in defense of others.

## SIXTH AFFIRMATIVE DEFENSE

39. Plaintiff's claims are barred because Defendant acted otherwise reasonably in defense of order of the Montgomery County Jail.

## SEVENTH AFFIRMATIVE DEFENSE

40. Plaintiff's claims are barred because Defendant acted reasonably out of necessity.

## EIGHTH AFFIRMATIVE DEFENSE

41. Plaintiff's claim is barred because Defendant acted within privilege.

## NINTH AFFIRMATIVE DEFENSE

42. Plaintiff's claim is barred by res judicata and collateral estoppel.

## TENTH AFFIRMATIVE DEFENSE

43. Plaintiff's claims fail because damages, if any, were caused, in whole or in part, by third parties not under the direction of control of Defendant.

## ELEVENTH AFFIRMATIVE DEFENSE

44. Plaintiff's claims fail because Plaintiff has failed to join a necessary and/or indispensable party or parties.

## TWELFTH AFFIRMATIVE DEFENSE

45. Plaintiff's claims fail because damages, if any, were caused, in whole or in part, by Plaintiff.

## THIRTEENTH AFFIRMATIVE DEFENSE

46. Plaintiff's claims fail because Plaintiff failed to mitigate damages, if any.

## FOURTEENTH AFFIRMATIVE DEFENSE

47. Plaintiff's claims are subject to caps under the provisions of Ohio S.B. 80, R.C. 2315.18 and 2315.21.

## FIFTEENTH AFFIRMATIVE DEFENSE

48. Plaintiff's claims are barred by his own criminal conduct.

## SIXTEENTH AFFIRMATIVE DEFENSE

49. Defendant incorporates the averments and denials in his Answer, Crossclaim, and Answer to Crossclaim that present affirmative defenses therein as if reincorporated in this part of the Pleading.

## SEVENTEENTH AFFIRMATIVE DEFENSE

50. Defendant reserves the right to raise additional affirmative defenses pursuant to Fed.R. Civ. P. 15.

WHEREFORE, Defendants pray that the Complaint be dismissed and that Defendant be awarded his statutory relief, costs, attorney's fees and other relief at law or equity.

## ANSWER TO CROSSCLAIM OF DEFENDANTS MONTGOMERY COUNTY BOARD OF COMMISSIONERS AND MONTGOMERY COUNTY SHERIFF PHIL PLUMMER

Now come Defendant-Crossclaimant, Jerrid Campbell, and for his Answer to the Crossclaim of the Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer, and states as follows:

62. In response to Paragraph 62 of the Crossclaim of the Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer, Defendant Campbell restates the averments and denials in his Answer to the Complaint of Daryl Wallace as set forth above as though fully restated herein. Defendant denies the averments in Paragraph 1 of Plaintiff's Complaint.

63. In response to Paragraph 63 of the Crossclaim of the Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer, Defendant Campbell restates the averments and denials in his Answer to the Complaint of Daryl Wallace as set forth above as though fully restated herein. Defendant denies the averments in Paragraph 1 of Plaintiff's Complaint.

64. Defendant denies the averments in Paragraph 64 of the Crossclaim of the Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

65. Defendants' Crossclaim fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

66. Defendants' Crossclaim is barred because Defendant Campbell is qualifiedly immune under federal law.

## THIRD AFFIRMATIVE DEFENSE

67. Defendants' Crossclaim is barred because Defendant Campbell is immune under Ohio Revised Code Chapter 2744.

## FOURTH AFFIRMATIVE DEFENSE

68. Defendants' Crossclaim is barred because of the applicable statute of limitations.

## FOURTH AFFIRMATIVE DEFENSE

69. Defendants' Crossclaim is barred because Defendant acted reasonably in self-defense.

## FIFTH AFFIRMATIVE DEFENSE

70. Defendants' Crossclaim is barred because Defendant acted reasonably in defense of others.

## SIXTH AFFIRMATIVE DEFENSE

71. Defendants' Crossclaim is barred because Defendant acted otherwise reasonably in defense of the order of the Montgomery County Jail.

## SEVENTH AFFIRMATIVE DEFENSE

72. Defendants' Crossclaim is barred because Defendant acted reasonably out of necessity.

## EIGHTH AFFIRMATIVE DEFENSE

73. Defendants' Crossclaim is barred because Defendant acted within privilege.

## NINTH AFFIRMATIVE DEFENSE

74. Defendants' Crossclaim is barred by res judicata and collateral estoppel.

## TENTH AFFIRMATIVE DEFENSE

75. Defendants' Crossclaim fails because damages, if any, were caused, in whole or in part, by third parties not under the direction of control of Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

76. Defendants' Crossclaim is barred because Defendants have failed to join a necessary and/or indispensable party or parties.

## TWELFTH AFFIRMATIVE DEFENSE

77. Defendants' Crossclaim fails because damages, if any, were caused, in whole or in part, by Plaintiff.

## THIRTEENTH AFFIRMATIVE DEFENSE

78. Defendants' Crossclaim fails because damages, if any, were caused, in whole or in part, by Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer.

## FOURTEENTH AFFIRMATIVE DEFENSE

79. Crossclaimants' claims for indemnification are barred because Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer failed to employ and exhaust the remedy provided in R.C. 2744.07(C).

## FIFTEENTH AFFIRMATIVE DEFENSE

80. Defendants' Crossclaim fails because Defendant Campbell was acting both in good faith and not manifestly outside the scope of his employment and/or official responsibilities.

## SIXTEENTH AFFIRMATIVE DEFENSE

81. Defendants' Crossclaim fails because principles of respondeat superior and primary liability do not apply under 42 U.S.C. 1983.

## SEVENTEENTH AFFIRMATIVE DEFENSE

82. Defendants' Crossclaim fails because there is no right to contribution or indemnification under § 1983.

## EIGHTEENTH AFFIRMATIVE DEFENSE

51. Defendant incorporates the averments and denials in his Answer, Crossclaim, and Answer to Crossclaim that present affirmative defenses therein as if reincorporated in this part of the Pleading.

## NINETEENTH AFFIRMATIVE DEFENSE

83. Crossclaim Defendant reserves the right to raise additional affirmative defenses pursuant to Fed.R. Civ. P. 15.

WHEREFORE, Crossclaim Defendant prays that the Crossclaim of Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer be dismissed and that Defendant be awarded his statutory relief under R.C. 2744.07(C), costs, attorney's fees and other relief at law or equity.

## CROSSCLAIM AGAINST DEFENDANT MONTGOMERY COUNTY BOARD OF COMMISSIONERS AND SHERIFF

Now comes Defendant-Crossclaimant, Jerrid Campbell, and for his Crossclaim against Defendant Montgomery County Board of Commissioners and Sheriff Phil Plummer, in his official and individual capacities, states as follows

## FIRST CROSSCLAIM CAUSE OF ACTION
(DECLARATORY ACTION FOR STATUTORY INDEMNIFICATION FOR COSTS OF DEFENSE UNDER OHIO REVISED CODE § 2744.07(A)(1) AGAINST BOARD OF COMMISSIONERS)

1. Defendant-Crossclaimant hereby reincorporates the previous paragraphs of his Answer, Answer to Crossclaim, and Crossclaim as if fully rewritten herein.

2. Ohio Revised Code Section ("R.C.") 2744.07(A)(2) requires that "a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to

person or property caused by an act or omission of the employee in connection with a governmental or proprietary function."

3. The statute further provides that "The political subdivision has the duty to defend the employee if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities."

4. At the time of the incident that is the subject of Plaintiff's Complaint, Defendant Campbell was acting in the scope and course of his employment and his official responsibilities and was acting in good faith, and he was doing so at all times relevant to the Plaintiff's claims.

5. On or about June 8, 2017, Montgomery County Prosecutor's Office informed Crossclaimant Campbell in writing that it would not be providing him with a defense in this action and that he would be responsible for his own fees and costs.

6. Defendant-Crossclaimant Campbell is entitled to a declaration that Montgomery County, as the political subdivision that employed him, be required to provide him with a defense in this action under R.C. 2744.07(A)(2).

7. Defendant-Crossclaimant Campbell is entitled to recover attorneys' fees incurred both the defense of this action which the Montgomery County has failed to defend on his behalf and the declaratory judgment action to enforce his rights under R.C. 2744.07.

## SECOND CROSSCLAIM CAUSE OF ACTION
(DECLARATORY ACTION FOR STATUTORY INDEMNIFICATION UNDER OHIO REVISED CODE § 2744.07(A)(2) AGAINST BOARD OF COMMISSIONERS)

8. Defendant-Crossclaimant hereby reincorporates the previous paragraphs of this Answer, Answer to Crossclaim, and Crossclaim as if fully rewritten herein.

9. R.C. 2744.07(A)(2) requires that "a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of employment or official responsibilities."

10. At the time of the incident that is the subject of Plaintiff's Complaint, Defendant Campbell was acting in the scope and course of his employment and his official responsibilities and was acting in good faith, and he was doing so at all times relevant to the Plaintiff's claims.

11. On or about June 8, 2017, Montgomery County informed Crossclaimant Campbell that it would not be providing him with a defense in this case, indicating indirectly that it also intends to deny him indemnification due to him under R.C. 2744.07(A)(2).

12. Defendant-Crossclaimant Campbell is entitled to a declaration that Montgomery County be required to provide him with indemnification for any damages in this action.

13. Defendant-Crossclaimant Campbell is entitled to recover attorneys' fees incurred both in the defense of this action which the Montgomery County has failed to defend on his behalf and in the declaratory judgment action to enforce his rights under R.C. 2744.07.

14. Defendant-Crossclaimant Campbell is entitled to a declaration that Montgomery County be required to provide him with a defense to all claims of Plaintiff.

**THIRD CROSSCLAIM CAUSE OF ACTION**
(STATE-LAW CLAIM FOR BAD FAITH; BREACH OF DUTY TO DEFEND AGAINST ALL DEFENDANTS)

15. Campbell hereby reincorporates the previous paragraphs of this Answer, Answer to Crossclaim and Crossclaim as if fully rewritten herein.

16. The Sheriff has, on other occasions, threatened not to provide representation, at his discretion, for other officers and/or employees who have been sued, if that officer would not agree to show him loyalty and conformance to the Sheriff's program and agenda.

17. The Sheriff and County Defendants have provided representation to all other employees who have been sued by third parties, including terrible injuries alleged by the Plaintiffs, including death, and some very obvious and extremely egregious conduct by the officer, including, but not limited to, a jail sergeant using pepper spray on an inmate in a restraint chair, which, of course, did not meet the definition of any exclusions of coverage by law. The examples of other employees treated extremely different will be presented in discovery through records and depositions. This was disparate treatment provided to Jerrid Campbell.

18. The failure to provide legal representation to Campbell was a direct and proximate result of discrimination and disparate treatment against Campbell in retaliation for his exercise of his constitutional, statutory, and civil rights, a protected activity, as alleged herein.

19. Campbell has been damaged by the failure to provide legal representation in that he has been forced to secure and pay for his own legal defense and has been forced to incur the time and expense of pursuing indemnification claims against Montgomery County.

**FOURTH CROSSCLAIM CAUSE OF ACTION**
(ACTION FOR RETALIATION IN VIOLATION OF CAMPBELL'S RIGHTS
UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION AND 42 U.S.C. 1983 AGAINST ALL DEFENDANTS)

20. Campbell hereby reincorporates the previous paragraphs of this Answer, Answer to Crossclaim and Crossclaim as if fully rewritten herein.

21. Campbell is an individual citizen of the United States and the State of Ohio. He resides in Montgomery County, Ohio. At all times relevant to this Complaint he was employed by Defendant, Montgomery County Board of Commissioners (hereinafter referred to as "Montgomery County"), and the Sheriff.

22. Defendant, Montgomery County Board of Commissioners, is a governing body created pursuant to the laws of the State of Ohio and is vested with powers to carry out the governmental functions necessary for the operation of the County. Defendant, Montgomery County appropriates funds for the operation of the Sheriff's Department, including funds for the salaries and wages of employees in the Sheriff's Department.

23. At all times relevant to this matter, Montgomery County employed Campbell.

24. Defendant, Phil Plummer, (hereinafter referred to as "Plummer") is the Montgomery County Sheriff and served in that capacity at all times relevant to this action.

25. Plummer was involved in the decisions to investigate, discipline, and terminate Campbell, as well as not to provide a legal defense for Campbell in this action under R.C. 2744.07(A)(2). Plummer is hereby being sued personally and in his capacity as Sheriff. Plummer resides in Montgomery County, Ohio.

26. Campbell's claims arose and all relevant events occurred within Montgomery County, Ohio.

27. Campbell was employed by Montgomery County as Corrections Officer from August 1, 2013, through May 23, 2017.

28. Campbell is a private citizen of Montgomery County, Ohio and a taxpayer.

29. Beginning in 2015, Campbell became aware of a Hostile Work Environment for African American employees, and racial discrimination at the Montgomery County Jail and corrections officers using excessive force to injure inmates, thereby violating the inmates' civil rights in violation of 42 U.S.C. 1983. The racial discrimination observed by Campbell included the segregation of female inmates on the basis of race, with African American inmates being placed in less desirable cell conditions than Caucasian inmates.

30. In October 2016, Campbell met with Josh Sweigart (hereinafter referred to as "Sweigart"), a reporter for the Dayton Daily News. Campbell spoke to Sweigart as a private citizen and not within his official duties with Montgomery County. Campbell disclosed to Sweigart that female inmates in the Montgomery County Jail were being segregated on the basis of race with African American inmates being placed in less desirable cell conditions than Caucasian inmates and that African Americans working in the jail were being subjected to racial discrimination.

31. On or about November 5, 2016, Sweigart published an article in the Dayton Daily News in which he disclosed Campbell as a source responsible for bringing to light racial discrimination against inmates and employees at the Montgomery County Jail.

32. On April 9, 2017, Plummer issued Campbell a three-day suspension for making public statements to Sweigart about racial discrimination at the Montgomery County Jail.

33. In January 2017, Campbell met with Don Black (hereinafter referred to as "Black"), a reporter for the Dayton Weekly News. Campbell spoke to Black as a private citizen and not within his official duties with Montgomery County. Campbell disclosed to Black issues of racial discrimination and a Hostile Work Environment at the Montgomery County Jail. Campbell also disclosed that an inmate was beaten into a coma by a

corrections officer and another inmate was murdered. Campbell stated that it was his opinion that both matters were covered up by Plummer.

34. On May 3, 2017, Plummer issued Campbell a ten-day suspension for making public statements to Black about racial discrimination, inmate abuse and corruption within the Montgomery County Jail.

35. On May 23, 2017, Plummer terminated Campbell's employment.

36. Campbell's statements to Sweigart and Black about inmate segregation based on race, racial discrimination against African American employees, inmate abuse and corruption at the Montgomery County Jail pertain to issues of public concern.

37. Campbell's interest in speaking freely and shedding light on the issues discussed above, outweighs any impact that his speech had on County services.

38. Campbell's statements to Sweigart and Black were made as a private citizen and not pursuant to his official duties.

39. Defendants' decisions to suspend Campbell and terminate his employment were in retaliation, and as punishment, for providing statements to Sweigart and Black, in exercise of rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

40. Defendants' decisions to deny Campbell representation in this lawsuit and to deny him indemnification for any judgment in this lawsuit were in retaliation, and as punishment, for providing statements to Sweigart and Black, in exercise of rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

41. Defendants, acting individually and in concert and under the color of State law, intentionally, deliberately, and knowingly punished Campbell for the exercise of rights

protected by the First and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983. Defendants' actions were arbitrary, capricious, and discriminatory, entitling Campbell to compensation for lost wages, embarrassment, mental suffering, and other compensatory and punitive damages.

42. As a direct and proximate result of Defendants unlawfully investigating Campbell for exercising his free speech rights, suspending him, and terminating his employment, Campbell has suffered injuries in the form of loss of earnings and benefits, damage to his personal and professional reputation, mental and emotional distress, and other damages.

43. The actions of Defendants were wanton and malicious and/or in reckless disregard for Campbell's constitutional, statutory, and common law rights under the laws of the United States.

### FIFTH CROSSCLAIM CAUSE OF ACTION
(ACTION FOR DAMAGES FOR RACE DISCRIMINATION UNDER OHIO
REVISED CODE § 4112.02 AND 4112.99 AGAINST ALL DEFENDANTS)

44. Campbell hereby reincorporates the previous paragraphs of this Answer, Answer to Crossclaim, and Crossclaim as if fully rewritten herein.

45. Campbell is African American.

46. At all times relevant to this action, Campbell was an employee of Defendant, Montgomery County as defined by R.C. § 4112.01(A)(3).

47. At all times relevant to this action, Montgomery County was an employer of Campbell as defined by R.C. § 4112.01(A)(2).

48. Beginning in January 2015, and continuing through the date of his termination, Campbell worked in a racially hostile environment. Examples of the racially offensive conduct to which Campbell he was subjected included, but were not limited to: 1.) An unsigned

greeting card with a monkey on it being placed in an African American corrections' officer's work mailbox; 2.) Detectives, a sergeant, a captain and deputies exchanging text messages referring to African Americans as "Niggers," "Mud Sharks" and other racially offensive terms; 3.) A Caucasian major threatening to send Campbell back to his "thug life" and referring to the Sheriff as "Baby Hitler:" 4.) Caucasian employees using the word "thug" and "Nigger" interchangeably; 5.) Frequent use of the word "lynching;" and 6.) Inmate segregation on the basis of race; 7.) Unequal discipline based on race; 8.) unequal work environment; and 9.) retaliation against three (3) white sergeants who spoke out against the racial discrimination, as well as the treatment of Campbell. The conduct was frequent, severe and pervasive and permeated the work environment.

49. Campbell was subjected to unwarranted disciplinary action and disparate treatment in that he was subjected to disciplinary actions, including a suspension due to allegations of using excessive force with an inmate, while similarly-situated Caucasian corrections officers were not disciplined due to their use of excessive force. Furthermore, Campbell was reassigned to the Jail's property room for approximately eight months where he primarily worked in isolation from other corrections officers. Caucasian officers accused of using excessive force were not subjected to such reassignments.

50. As a direct and proximate result of Defendants unlawfully discriminating against Campbell due to his race, he has suffered injuries in the form of loss of earnings and benefits, damage to his personal and professional reputation, mental and emotional distress, and other damages.

51. The actions of Defendants were wanton and malicious and/or in reckless disregard for Campbell's statutory, rights under the laws of the State of Ohio.

## SIXTH CROSSCLAIM CAUSE OF ACTION
### (ACTION FOR DAMAGES FOR RETALIATION UNDER OHIO REVISED CODE § 4112.02 AND 4112.99 AGAINST ALL DEFENDANTS)

52. Campbell hereby reincorporates the previous paragraphs of this Answer and Crossclaim as if fully rewritten herein.

53. Campbell engaged in protected activities under R.C. 4112.02 when he made internal complaints of racial employment discrimination in approximately June, 2016, and on November 29, 2016, and filed a charge of race discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission on or about June 13, 2016. A copy of the charge is attached hereto as Exhibit A.

54. The Ohio Civil Rights Commission issued a letter of determination on Campbell's charge on April 6, 2017.

55. In retaliation for his complaints of race discrimination, Campbell was subjected to harassment, unwarranted disciplinary actions, including suspensions of three days and ten days on April 9, 2017 and May 3, 2017, respectively, and his employment was terminated on May 23, 2017.

56. In retaliation for his complaints of racial discrimination and his own unlawful treatment, the Defendants referred Campbell for a psychiatric evaluation for fitness for duty.

57. The psychiatrist chosen by Defendants found Campbell fit for duty, but suffering great psychological and psychiatric damage as a proximate result of the unlawful actions of Defendants.

58. The Defendant Sheriff, through his Human Relations Director, attempted to use unlawful coercion and duress to force the psychiatrist to issue a finding that Campbell was unfit for duty. The psychiatrist refused. The details will be proved at trial.

59. Defendants have also refused to provide a defense for Campbell in this action in retaliation for his complaints of racial discrimination. As a result, Campbell has filed a crossclaim for indemnification in retaliation, something never before used in such matters.

60. As a direct and proximate result of Defendants unlawfully retaliating against Campbell for engaging in legally protected activities under R.C. § 4112, Campbell has suffered injuries in the form of loss of earnings and benefits, damage to his personal and professional reputation, mental and emotional distress, and other damages.

61. The actions of Defendants were wanton and malicious and/or in reckless disregard for Campbell's statutory rights under the laws of the State of Ohio.

## SEVENTH CROSSCLAIM CAUSE OF ACTION
(ACTION FOR DAMAGES FOR RACE DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e et al. AGAINST ALL DEFENDANTS)

62. Campbell hereby reincorporates the previous paragraphs of this Answer and Crossclaim as if fully rewritten herein.

63. On or after May 24, 2017, Campbell received a Right to Sue Notice from the Equal Employment Opportunity Commission which is attached hereto as Exhibit B.

64. Beginning in January 2015, and continuing through the date of his termination, Campbell, who is African American, worked in a racially hostile environment. Examples of the racially offensive conduct to which Campbell he was subjected included, but were not limited to: 1.) An unsigned greeting card with a monkey on it being placed in an African American corrections' officer's work mailbox; 2.) Detectives, a sergeant, a captain and deputies exchanging text messages referring to African Americans as "Niggers," "Mud Sharks" and other racially offensive terms; 3.) A Caucasian major threatening to send

Campbell back to his "thug life" and referring to the Sheriff as "Baby Hitler:" 4.) Caucasian employees using the word "thug" and "Nigger" interchangeably; 5.) Frequent use of the word "lynching;" 6.) Inmate segregation on the basis of race; 7.) Unequal discipline based on race; 8.) unequal work environment; and 9.) retaliation against three (3) white sergeants who spoke out against the racial discrimination, as well as the treatment of Campbell. The conduct was frequent, severe and pervasive and permeated the work environment.

65. Campbell was subjected to unwarranted disciplinary action and disparate treatment in that he was subjected to disciplinary actions, including a suspension due to allegations of using excessive force, while similarly-situated Caucasian corrections officers, were not disciplined due to similar allegations of using excessive force. Furthermore, Campbell was reassigned to the Jail's property room for approximately eight months where he primarily worked in isolation from other corrections officers. Caucasian officers accused of using excessive were not subjected to such reassignments.

### EIGHTH CROSSCLAIM CAUSE OF ACTION
(ACTION FOR DAMAGES FOR RACE DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. § 1981 AGAINST ALL DEFENDANTS)

66. Campbell hereby reincorporates the previous paragraphs of this Answer and Crossclaim as if fully rewritten herein.

67. Beginning in January 2015, and continuing through the date of his termination, Campbell, who is African American, worked in a racially hostile environment. Examples of the racially offensive conduct to which Campbell he was subjected included, but were not limited to: 1.) An unsigned greeting card with a monkey on it being placed in an African American corrections' officer's work mailbox; 2.) Detectives, a sergeant, a captain and

deputies exchanging text messages referring to African Americans as "Niggers," "Mud Sharks" and other racially offensive terms; 3.) A Caucasian major threatening to send Campbell back to his "thug life" and referring to the Sheriff as "Baby Hitler:" 4.) Caucasian employees using the word "thug" and "Nigger" interchangeably; 5.) Frequent use of the word "lynching;" and 6.) Inmate segregation on the basis of race; 7.) Unequal discipline based on race; 8.) unequal work environment; and 9.) retaliation against three (3) white sergeants who spoke out against the racial discrimination, as well as the treatment of Campbell. The conduct was frequent, severe and pervasive and permeated the work environment.

68. Campbell was subjected to unwarranted disciplinary action and disparate treatment in that he was subjected to disciplinary actions, including a suspension due to allegations of using excessive force, while similarly-situated Caucasian corrections officers, were not disciplined due to similar allegations. Furthermore, Campbell was reassigned to the Jail's property room for approximately eight months where he primarily worked in isolation from other corrections officers. Caucasian officers accused of using excessive force were not subjected to such reassignments.

69. Campbell engaged in protected activities under 42 U.S.C. § 1981 when he made internal complaints of racial employment discrimination in approximately June, 2016, and on November 29, 2016, and filed a charge of race discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission on or about June 13, 2016.

70. Due to his complaints of race discrimination, Campbell was subjected to harassment, unwarranted disciplinary actions, including suspensions of three days and ten days on April 9, 2017 and May 3, 2017, and his employment was terminated on May 23, 2017.

71. As a direct and proximate result of Defendants unlawfully discriminating against Campbell due to his race and retaliating against him, he has suffered injuries in the form of loss of earnings and benefits, damage to his personal and professional reputation, mental and emotional distress, and other damages.

72. The actions of Defendants were wanton and malicious and/or in reckless disregard for Campbell's statutory, rights under 42 U.S.C. 1981.

WHEREFORE, Counterclaimant Jerrid Campbell asks:

(1) that the Court declare that Crossclaim Defendant Montgomery County Board of Commissioners indemnify Campbell for the cost of his defense and reimburse him for costs incurred in defending this action and pursuing this crossclaim; and

(2) that the Court declare that Crossclaim Defendant Montgomery County Board of Commissioners indemnify Campbell for any judgment in this action; and

(3) for compensatory and punitive damages in an amount greater than twenty-five thousand dollars ($25,000.00); and

(4) for costs of this action to include attorneys' fees pursuant to 42 U.S.C. § 1988; and

(5) for prejudgment interest, post-judgment interest, attorneys' fees and costs; and

(6) that the claim of Plaintiff, Daryl Wallace, be dismissed with prejudice; and

(7) that the Crossclaim of Defendants Montgomery County Board of Commissioners and Sheriff Phil Plummer be dismissed with prejudice; and

that the Court further award Crossclaimant any and all other relief to which he is entitled.

Respectfully submitted,

*/s/ Jason P. Matthews*
Jason P. Matthews-#0073144
Jason P. Matthews, LLC
130 West Second Street, Suite 924
Dayton, OH 45402
(937) 608-4368/ Fax 1-888-577-3589
jason@daytonemploymentlawyers.com
Co-Trial Attorney for Defendant Jerrid Campbell

*/s/ Dwight D. Brannon*
Dwight D. Brannon (0021657)
Matthew C. Schultz (0080142)
BRANNON & ASSOCIATES
130 W. Second St.    Suite 900
Dayton, OH  45402
Telephone:    (937) 228-2306
Facsimile:    (937) 228-8475
E-Mail:        dbrannon@branlaw.com

## JURY DEMAND

Plaintiff respectfully demands a trial by jury upon all issues presented herein.

*/s/ Dwight D. Brannon*
Dwight D. Brannon

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served through the Southern District of Ohio Electronic Filing System upon the following this 21st day of August, 2017:

Alphonse A. Gerhardstein, Esq.
Jennifer L. Branch, Esq.
Adam Gerhardstein, Esq.
Gerhardstein & Branch Co. LPA
441 Vine St.; Suite 3400
Cincinnati, Ohio 45202
jbranch@gbhfirm.com
agerhardstein@gbhfirm.com
adamgerhardstein@gbhfirm.com
Counsel for Plaintiff, Daryl Wallace

Benjamin A. Mazer
Ann M. Jagielski
Assisting Prosecuting Attorneys
301 West Third Street; P.O. Box 972
Dayton, Ohio 45422
mazerb@mcohio.org
jagieskia@mcohio.org
Attorneys for Defendant Montgomery
County Board of Commissioners and Sheriff
Phil Plummer

/s/ Dwight D. Brannon
Dwight D. Brannon