IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DARYL WALLACE, | : | Case No. 3:17-cv-00183 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| MONTGOMERY COUNTY, OHIO And THE MONTGOMERY COUNTY BOARD OF COMMISSIONERS, et al., | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANT CAMPBELL'S MOTION
FOR JUDGMENT ON THE PLEADINGS (DOC. 15) AND
GRANTING IN PART THE MONTGOMERY COUNTY DEFENDANTS'
PARTIAL MOTION TO DISMISS (DOC. 16) CROSS-CLAIMS**

---

This case is before the Court on the Motion for Judgment on the Pleadings (Doc. 15) under Fed. R. Civ. P. 12(c) filed by Defendant Jerrid Campbell ("Campbell") and the Partial Motion to Dismiss (Doc. 16 at PAGEID # 84-95) Campbell's Cross-Claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendants Montgomery County, Ohio, the Montgomery County Board of Commissioners, and Montgomery County Sheriff Phil Plummer (collectively, the "Montgomery County Defendants"). Both the Motion for Judgment on the Pleadings and Motion to Dismiss are fully briefed and ripe for review. (*See* Docs. 15, 18, 19 and 16, 21, 22, respectively.) For the reasons below, the Court **GRANTS** Campbell's Motion for Judgment on the Pleadings (Doc. 15) and **GRANTS IN PART** the Montgomery County Defendants' Motion to Dismiss (Doc. 16).

I.   BACKGROUND

A. Wallace's Complaint

As alleged in the Complaint, Plaintiff Daryl Wallace ("Wallace") was an inmate in the Montgomery County Jail. (Doc. 1 at ¶ 8.) On September 28, 2015, the hot water was not working in his cell. (*Id.* at ¶ 9.) Wallace twice complained to Campbell, a Montgomery County Sheriff Corrections Officer, about the lack of hot water. (*Id.* at ¶ 10.) Campbell allegedly refused to call maintenance to address the problem. (*Id.*)

Around 11:15 a.m., Wallace became frustrated, cursed at Campbell, and called him a name. (*Id.* at ¶ 11.) Campbell allegedly followed Wallace and told him to stop. (*Id.* at ¶ 12.) After Wallace complied, Campbell allegedly shoved Wallace off his feet to the ground and repeatedly punched him while using handcuffs as makeshift brass knuckles. (*Id.* at ¶ 12-13.) Wallace pushed Campbell off of him, but Campbell allegedly returned to Wallace and punched him again. (*Id.* at ¶ 15.) Additional correctional officers arrived to the scene and Wallace was handcuffed. (*Id.* at ¶ 16.) Campbell led Wallace to another part of the jail and into an elevator, where Campbell allegedly pushed Wallace's head into a corner. (*Id.* at ¶ 18.)

A medic later cleaned and dressed a wound to Wallace's scalp. (*Id.* at ¶ 19.) Wallace claims to experience regular migraines and worsened vision due to the alleged assault. (*Id.* at ¶ 20-21.)

On May 24, 2017, Wallace filed the Complaint in this case, asserting claims for violation of his civil rights under 42 U.S.C. § 1983 against Campbell and the Montgomery County Defendants. Specifically, he alleged that the Defendants deprived

him of his rights secured by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, including his right to exercise freedom of speech without retaliation, right to be free from excessive force, his right to be free from cruel and unusual punishment, and his right to be free of governmental actions that shock the conscience. (*Id.* at ¶ 32.) Wallace further alleged that Montgomery County's policies, practices, and customs were a moving force behind his injuries; that it failed to properly supervise, train and discipline Campbell; and ratified Campbell's unconstitutional conduct. (*Id.* at ¶ 32.)

### B. **Defendants' Responses to the Complaint**

On August 11, 2017, the Montgomery County Defendants filed their Answer to the Complaint, which included a Cross-Claim against Campbell. (Doc. 12.) In the Cross-Claim, the Montgomery County Defendants assert a claim for complete indemnity from Campbell in the event that a judgment is entered against them on Wallace's claims. (Doc. 12 at ¶ 64.)

On August 27, 2017, Campbell filed an Answer to the Complaint, Answer to the Montgomery County Defendants' Cross-Claim, and Cross-Claim against the Montgomery County Defendants. (Doc. 14.) In support of his Cross-Claim, Campbell alleges that he was employed as a Montgomery County Corrections Officer from August 1, 2013 through May 23, 2017. (*Id.* at PAGEID # 55.) Beginning in 2015, he allegedly became aware of a hostile work environment for African American employees and racial discrimination at the Montgomery County Jail. (*Id.* at PAGEID # 56.) For example, Campbell alleges that female inmates were segregated on the basis of race,

3

with African American inmates being placed in less desirable cell conditions than Caucasian inmates.  (*Id.*)  He also allegedly became aware of corrections officers using excessive force to injure inmates.  (*Id.*)

In October 2016, Campbell alleges that he told a reporter for the Dayton Daily News about the segregation of African American inmates in less desirable cell conditions and that African Americans working in the jail were being subjected to racial discrimination.  (*Id.*)  On November 5, 2016, the reporter published an article in the Dayton Daily News that disclosed Campbell as the source of information about alleged racial discrimination at the Montgomery County Jail.  (*Id.*)  On April 9, 2017, Campbell alleges that Defendant Montgomery County Sheriff Phil Plummer (the "Sheriff") put him on a three-day suspension for making public statements to the Dayton Daily News about the conditions at Montgomery County Jail.  (*Id.*)

In January 2017, Campbell met with a reporter for the Dayton Weekly News. (*Id.*) Campbell allegedly told this reporter about racial discrimination and the hostile work environment at Montgomery County Jail.  (*Id.*)  He also disclosed that an inmate was allegedly "beaten into a coma by a corrections officer and another inmate was murdered." (*Id.* at PAGEID # 56-57.)  Campbell claims to have told the reporter that, in his opinion, the Sheriff had covered up both matters.  (*Id.* at PAGEID # 57.)  On May 3, 2017, the Sheriff allegedly issued Campbell a ten-day suspension for making public statements about the Montgomery County Jail.  (*Id.*)  On May 23, 2017, the Sheriff terminated Campbell's employment.

Montgomery County has not provided a legal defense for Campbell or agreed to indemnify him against any judgment in this case. Campbell alleges that the Sheriff has threatened not to provide legal representation for other officers and employees who have been sued, if the officer "would not agree to show him loyalty and conformance to the Sheriff's program and agenda." (Doc. 14 at PAGEID # 54.) Campbell further alleges that he was denied representation in this case as a result of discrimination and in retaliation for his exercise of his constitutional, statutory, and civil rights. (*Id.*)

Campbell's Cross-Claim asserts eight causes of action: (1) declaratory action for statutory indemnification for costs of defense under Ohio Revised Code § 2744.07(A)(1) against the Montgomery County Board of Commissioners, (2) declaratory action for statutory indemnification under Ohio Revised Code § 2744.07(A)(2) against the Montgomery County Board of Commissioners, (3) state-law claim for bad faith, breach of duty to defend against the Montgomery County Defendants, (4) claim for retaliation in violation of Campbell's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 against the Montgomery County Defendants, (5) claim for damages for race discrimination under Ohio Revised Code § 4112.02 and 4112.99 against the Montgomery County Defendants, (6) claim for damages for retaliation under Ohio Revised Code § 4112.02 and 4112.99 against the Montgomery County Defendants, (7) claim for damages for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. against the Montgomery County Defendants, and (8) claim for damages for race discrimination and retaliation under 42 U.S.C. § 1981 against the Montgomery County Defendants.

### C. Dismissal of Wallace's Complaint

On December 6, 2017, Wallace moved to dismiss all of his claims with prejudice against all named Defendants pursuant to Fed. R. Civ. P. 41(a)(2). (Doc. 23.) On December 8, 2017, after Defendants notified the Court that they did not oppose the motion, the Court granted Wallace's Motion to Dismiss. (Doc. 24.) As a result, the only remaining claims in this case are the Defendants' cross-claims against each other.

## II. ANALYSIS

### A. Campbell's Motion for Judgment on the Pleadings

Campbell moves for judgment on the pleadings on the Montgomery County Defendants' cross-claim for indemnification. This motion presents a pure question of law: May a defendant in a § 1983 action for violation of an inmate's civil rights bring a cross-claim for indemnification against a co-defendant? Campbell argues that the answer to this question is no. The Montgomery County Defendants disagree.

In *Northwest Airlines, Inc. v. Transport Workers Union of* America, AFL–CIO, 451 U.S. 77 (1981), the Supreme Court stated that courts are not free to read a cause of action for indemnity into statutes where no statutory basis exists for such a claim. In that case, the Supreme Court determined that no right to contribution exists among co-defendants under the Equal Pay Act or Title VII. The Montgomery County Defendants note that *Northwest Airlines* did not involve claims under § 1983. Nevertheless, the principle articulated in the case—that courts should not read an indemnification claim into a statute without any statutory basis—still applies. The Montgomery County Defendants

have not pointed to any provision of § 1983, nor any legislative history, to support the contention that § 1983 provides for an indemnification claim.

Neither the Sixth Circuit nor any district courts in the Southern District of Ohio have addressed this question. Other districts courts in the Sixth Circuit, however, have uniformly held that a defendant in a § 1983 action cannot bring an indemnification claim against a co-defendant. *See Frantz v. City of Pontiac*, 432 F. Supp. 2d 717, 722 (E.D. Mich. 2006); *Compton v. City of Harrodsburg, Ky.*, No. 5:12-CV-302-JMH, 2013 WL 4785325, at *3 (E.D. Ky. Sept. 6, 2013), order vacated in part on other grounds on reconsideration, No. 5:12-CV-302-JMH-REW, 2013 WL 5503195 (E.D. Ky. Oct. 2, 2013); *Dempsey v. City of Lawrenceburg*, No. CIV.A. 3:09-33-DCR, 2010 WL 3724838, at *3 (E.D. Ky. Sept. 17, 2010); *Cochran v. Folger*, No. CIV.A 5:09-302-JMH, 2010 WL 2696634, at *3 (E.D. Ky. July 6, 2010); *Hart v. City of Williamsburg, Ky.*, No. CIV.A. 6:04-321-DCR, 2005 WL 1676894, at *3 (E.D. Ky. July 16, 2005); *Hughes v. Adams*, No. CIV.A.5:06CVP176-R, 2007 WL 3306076, at *2 (W.D. Ky. Nov. 6, 2007). All or most of these cases rely on the Supreme Court's decision in *Northwest Airlines* and the absence of any statutory basis or other authority supporting the existence of a right to indemnification under § 1983. In addition, at least one district court also noted that permitting a state law claim for indemnification in a § 1983 case would not be consistent with § 1983's deterrence policy. *Hughes* 2007 WL 3306076, at *2.

The Court is persuaded by the reasoning in these cases and *Northwest Airlines* that there is no right to indemnification under § 1983. Accordingly, the Court **GRANTS** Campbell's Motion for Judgment on the Pleadings.

7

### B. The Montgomery County Defendants' Motion to Dismiss

The Montgomery County Defendants move to dismiss Counts III through VIII of Campbell's Cross-Claim.

#### i. Count III – Bad Faith and Breach of Duty

The Montgomery County Defendants argue that Campbell's claims for bad faith and breach of the duty to defend must be dismissed because they fail to state claims upon which relief can be granted. (Doc. 16 at 7, citing Fed. R. Civ. P. 12(b)(6).) The Montgomery County Defendants first argued that they owed no duty to Campbell, but abandoned that argument in their reply brief. Instead, they argue that, while Ohio Revised Code § 2744.07(A)(1) imposes a duty to provide a legal defense in certain circumstances, it does not support a claim for breach of that duty or its bad faith execution. (Doc. 22 at 1-3.) This argument is well-taken.

The Montgomery County Defendants' duty to provide Campbell legal representation arises under Ohio Revised Code § 2744.07(A)(1), which states:

> Except as otherwise provided in this division, a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function. The political subdivision has the duty to defend the employee if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities. Amounts expended by a political subdivision in the defense of its employees shall be from funds appropriated for this purpose or from proceeds of insurance. The duty to provide for the defense of an employee specified in this division does not apply in a civil action or proceeding that is commenced by or on behalf of a political subdivision.

Ohio Rev. Code § 2744.07(A)(1). Campbell has not been provided legal representation by Montgomery County in this case on the grounds that he was not "acting both in good faith and not manifestly outside the scope of employment or official responsibilities." *Id.*

The Ohio Revised Code provides for a court determination of whether a political subdivision is required to provide a defense under subsection (A)(1). It states:

> If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in division (A)(1) of this section, upon the motion of the political subdivision, the court shall conduct a hearing regarding the political subdivision's duty to defend the employee in that civil action. The political subdivision shall file the motion within thirty days of the close of discovery in the action. After the motion is filed, the employee shall have not less than thirty days to respond to the motion.
>
> At the request of the political subdivision or the employee, the court shall order the motion to be heard at an oral hearing. At the hearing on the motion, the court shall consider all evidence and arguments submitted by the parties. In determining whether a political subdivision has a duty to defend the employee in the action, the court shall determine whether the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities. The pleadings shall not be determinative of whether the employee acted in good faith or was manifestly outside the scope of employment or official responsibilities.
>
> If the court determines that the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities, the court shall order the political subdivision to defend the employee in the action.

Ohio Rev. Code § 2744.07(C).

Campbell argues that, in addition to this statutory remedy for refusal to provide a legal defense, he may also bring claims for breach of the duty to defend and bad faith in the exercise of that duty. "In determining whether statutes may create a private

9

cause of action for enforcement, the Ohio Supreme Court has held that a 'statutory policy' may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio Legislature." *Ayers v. City of Cleveland*, 2017-Ohio-8571, ¶ 30 (quoting *Fawcett v. G. C. Murphy & Co.*, 46 Ohio St.2d 245, 249, 348 N.E.2d 144 (1976)). Ohio courts apply a three-part test to determine when a private cause of action arises by implication under a statute. "The three prongs of the test ask (1) are the plaintiffs in a class for whose special benefit the statute was enacted; (2) is there any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action; and (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiffs?" *Ayers*, 2017-Ohio-8571 at ¶ 30 (citing *Strack v. Westfield Cos.*, 33 Ohio App.3d 336, 337, 515 N.E.2d 1005 (9th Dist.1986); *Elwert v. Pilot Life Ins. Co.*, 77 Ohio App.3d 529, 602 N.E.2d 1219 (1st Dist.1991)). Here, this test is not met.

Campbell's claims meet an insurmountable obstacle at the second prong of the test. The legislative history of the statute strongly implies that the Ohio legislature intended for the court determination set out in § 2744.07(C) to be the only remedy for a refusal to defend under § 2744.07(A)(1). In 2002, the Ohio legislature amended § 2744.07(C) to remove a provision entitling an employee to file an action in the court of common pleas seeking a determination "as to the appropriateness of the refusal of the political subdivision to provide him with a defense . . . ." *Political Subdivisions—Inclusion of Certain School Facilities and Railroad Quiet Zones as Governmental Functions—General Amendments*, 2002 Ohio Laws File 239 (S.B. 106). In its place, it inserted the

current remedy, which empowers only the political subdivision to bring a motion for a hearing on the issue within thirty days of the close of discovery. *Id.* This amendment implies that the Ohio legislature intended to take away an employee's ability to bring a private action in favor of a court determination initiated by the political subdivision. It would be inconsistent with this amendment to imply an even broader private right of action, such as the claims asserted by Campbell.

Campbell cites several cases in support of the existence of his claims, but they are all distinguishable. (Doc. 21 at 3-6, (citing *Koenig v. Dayton*, 28 Ohio App.3d 70 (2d Dist. 1985); *Suver v. Pers. Serv. Ins. Co.*, 11 Ohio St. 3d 6, 7 (1984); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272 (1983); *Allen v. Standard Oil Co.*, 2 Ohio St. 3d 122 (1982)).) The primary case that he relies on is *Koenig*, in which the City of Dayton refused to defend the plaintiff police officer pursuant to an agreement between it and the Fraternal Order of Police. 28 Ohio App. 3d at 71. In that case, the court of appeals found that the City of Dayton agreed to act as a self-insurer for police professional liability insurance and therefore was responsible for the attorney fees and costs in both the action against the officer and officer's action to enforce the city's obligation to defend. *Id.* at 73. The court of appeals reasoned that "[i]n all such contract cases, the rationale behind allowing attorney fees is to place the insured in the position he would have occupied if the insurer had performed its duty." *Id.* Thus, the indemnification claim in *Koenig* was, in essence, a claim for breach of contract similar to one that might be brought against an insurance company. The court of appeals did not imply a private right of action to enforce a statutory right to a legal defense.

The other cases cited by Campbell are likewise inapposite. They involve the enforcement of contractual rights, not the interpretation of statutory rights. *Suver*, 11 Ohio St. 3d at 6 (issuer of a financial responsibility bond has a duty to act in good faith in the handling and payment of claims); *Hoskins*, 6 Ohio St. 3d at 272 ("Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured."); *Allen*, 2 Ohio St. 3d at 125 (oil company entitled to indemnification under indemnification provision of agreement, including payment of attorney fees and costs to enforce such provision).

The Court grants the Montgomery County Defendants' Motion to Dismiss Campbell's claims for breach of the duty to defend and bad faith.

### ii. **Counts IV through VIII Relating to Campbell's Employment**

The Montgomery County Defendants move to dismiss Counts IV through VIII of the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. They argue that these claims do not arise out of the transaction or occurrence that is the subject matter of the original action and therefore are not proper cross-claims under Fed. R. Civ. P. 13(g). In response, Campbell argues that these claims are not cross-claims under Rule 13 because they were brought in response to the Montgomery County Defendants' Cross-Claim. When the Montgomery County Defendants brought claims against him, argues Campbell, they became opposing parties under Rule 13 and therefore his claims are mandatory and permissive counterclaims against an opposing party under Rule 13(a) and (b).

The Montgomery County Defendants distinguish one of the cases relied on by Campbell—*Allstate Ins. Co. v. Smith*, 169 F. Supp. 374 (E.D. Mich. 1959)—but fail to distinguish the more analogous and controlling precedent: *Kane v. Magna Mixer Co.*, 71 F.3d 555 (6th Cir. 1995). In *Kane*, the Sixth Circuit held that a defendant's failure to assert an indemnity counterclaim against its co-defendant prevented its assignees from later pursuing that indemnity claim in a separate action. 71 F.3d at 561.

In the underlying action, a woman working in a cookie company lost two fingers of one hand while operating an industrial dough mixer. *Id.* at 558. She and her husband sued the successor company that purchased the industrial dough mixer manufacturer's assets. The successor company filed a third-party complaint for indemnification against the manufacturer. The asset purchase agreement between the successor company and the manufacturer contained complementary indemnity provisions. Under the provisions, the manufacturer agreed to indemnify the successor company for any liability arising from the transferred assets prior to their transfer; and the successor company agreed to indemnify the manufacturer for any liabilities arising from the transferred assets after their transfer. *Id.* The manufacturer did not bring any counterclaims against the successor company in the underlying suit. Meanwhile, the plaintiffs amended their complaint to bring direct claims against the manufacturer in addition to those against the successor company.

The successor company obtained a judgment in its favor on summary judgment. *Id.* The plaintiffs later obtained a default judgment against the manufacturer. The manufacturer could not pay the judgment, however, and so assigned its

13

indemnification right under the asset purchase agreement to plaintiffs. Plaintiffs then brought a lawsuit against the successor company to enforce the indemnification provision and collect on the judgment against the manufacturer.

In the latter action for indemnification, the successor company argued, among other arguments, that the plaintiffs could not bring the indemnification claim because the manufacturer waived it by failing to assert it in the prior action. The district court agreed, finding that the manufacturer's indemnification claim was a compulsory counterclaim under Fed. R. Civ. P. 13(a), which the manufacturer had failed to assert. *Id.* at 559. On appeal, the Sixth Circuit affirmed. It held that, once the successor company brought its indemnification claim against the manufacturer in the plaintiffs' prior action, the manufacturer was required to bring its indemnification claim as a mandatory counterclaim under Fed. R. Civ. P. 13(a). Its failure to do so waived its assignees' right to bring the claim in the later action. *Id.* at 562-63.

Here, Wallace initiated this action against the Montgomery County Defendants and Campbell. With their Answer, the Montgomery County Defendants filed a Cross-Claim for indemnification against Campbell. Under *Kane*, the Montgomery County Defendants and Campbell became opposing parties and Campbell was obligated to bring any compulsory counterclaims that he had against them under Rule 13(a). Campbell was further permitted, under Rule 13(b), to state any other claims that he had against the Montgomery County Defendants. The Montgomery County Defendants' failure to distinguish *Kane* in their Reply is fatal to their Motion to Dismiss Counts IV through VIII.

Whether compulsory or permissive, Campbell was permitted to bring the claims in Count IV through VII of his Cross-Claim. Permitting him to proceed on those claims is consistent with the Sixth Circuit's statement that the purpose of Rule 13 is to have "all issues be resolved in one action, with all parties before one court, complex though the action may be." *LASA Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969).

This action has grown more complex, but there is a relationship among the parties' claims. Wallace brought a civil rights action under § 1983 for infringement of his civil rights. (Doc. 1 at ¶ 32.) In response, the Montgomery County Defendants sought indemnification from Campbell on the theory that "his acts were the sole and proximate cause of Plaintiff's injuries." (Doc. 12 at PAGEID # 39.) Campbell, on the other hand, alleges that he is entitled to a legal defense and indemnification from the Montgomery County Defendants—not the other way around—because he was acting in the scope and course of his employment, and in good faith, at all times relevant to Wallace's claims. (Doc. 14 at PAGEID # 52.) He further alleges that he has been denied a legal defense in retaliation for his own assertion of his civil rights, which are the facts underlying Counts IV through VIII of his Cross-Claim. (*Id*. at PAGEID # 54-55.) Thus, the remaining claims in this case are related to Wallace's original claims, although through a complex web.

It is also worth noting that the Court has subject matter jurisdiction over Campbell's claims, as some of them are asserted under 42 U.S.C. §1983 and Title VII of the Civil Rights Act of 1964. Consequently, Campbell could simply re-file his claims in

federal court in a separate lawsuit, which would introduce unnecessary expense and delay into this litigation.

The Court denies the Montgomery County Defendants' Motion to Dismiss Counts IV through VIII of Campbell's Cross-Claim.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Campbell's Motion for Judgment on the Pleadings (Doc. 15) and **DISMISSES** the Montgomery County Defendants' Cross-Claim for indemnification. The Court **GRANTS IN PART** the Montgomery County Defendants' Motion to Dismiss (Doc. 16). Specifically, the Court **DISMISSES** Count III of Campbell's Cross-Claim and **DENIES** the Montgomery Count Defendants' request for dismissal of Counts IV through VIII of the same.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, February 14, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE